IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MOHAMMED KHALIL GHALI, 30742-177 § | | |
| § | | |
| VS. § | | NO. 3:08-CV-1625-M |
| § | | NO. 3:03-CR-212-M |
| UNITED STATES OF AMERICA § | | |
| § | | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge follow:

**FINDINGS AND CONCLUSIONS**

**I. Procedural Background**

Petitioner was convicted of one count of conspiracy to possess, transport and receive goods stolen from an interstate shipment; one count of possessing goods stolen from an interstate shipment; three counts of transporting stolen property; nine counts of money laundering sting; and one count of conspiracy to commit concealment money laundering in violation of 18 U.S.C. §§ 371, 2314, 2315, 1956(a)(3)(A) and 1956(h). On February 2, 2005, Petitioner was sentenced to a total of 168 months confinement. On June 7, 2006, the Fifth Circuit affirmed the conviction and sentence. *United States v. Ghali*, 184 Fed. Appx. 391 (5th Cir. 2006). On October 30, 2006, the Supreme Court denied certiorari. *United States v. Ghali*, 549 U.S. 1008 (2006).

Petitioner argues his convictions involving money laundering should be vacated based on

Page 1

the Supreme Court's decision in *United States v. Santos*, 553 U.S. 507 (2008). He argues *Santos* invalidated his money laundering convictions because the government failed to prove the proceeds of his specified unlawful activity were profits rather than gross receipts.

## II. Factual Background

The following factual background is taken from the Fifth Circuit Court of Appeal's decision on direct appeal.

> [Petitioner] owned and operated Sunshine Market, a convenience store in Arlington, Texas, and Sunshine Wholesale, a wholesale business in a warehouse in Grand Prairie, Texas. [Petitioner] also owned A-1 Market, another convenience store in Arlington, Texas. The government suspected that [Petitioner], through his convenience stores and wholesale business, was buying and reselling stolen goods. . . . .
>
> The investigation included a sting operation using confidential informants as well as an undercover officer. During the course of the sting operation, [Petitioner's] operation paid approximately $230,000 for property that was represented by task force agents to have been stolen in Oklahoma and then brought from Oklahoma to Texas for sale. There were numerous transactions in which somebody in [Petitioner's] organizations, although never [Petitioner] in person, purchased property thus represented as stolen. Nine of these transactions, occurring from November 2002 to May 2003, involved property valued at more than $5,000, which led to the nine counts of money laundering-sting. Although [Petitioner] did not personally make the payments in these nine transactions, the government connected [Petitioner] to the approval of each charged transaction through recorded phone calls. . . . .
>
> The federal task force's investigation also included the inspection of outbound shipments from Sunshine Wholesale to various entities via Federal Express (FedEx). The first of these searches . . . occurred on May 6, 2002, after FedEx employees in Irving noticed that a shipment of infant formula from Sunshine Wholesale in Grand Prairie, Texas, to United Trading in Lexington, Kentucky, was mislabeled as baby products. A federal task force officer had previously alerted FedEx to be on the lookout for suspicious shipments of infant formula, and so this shipment was brought to the attention of the federal task force, which then searched the shipment and found cans of infant formula that had previously been represented as stolen. After this, the FedEx employees in Irving contacted a member of the federal task force every time that Sunshine Wholesale made a shipment, or received an interstate shipment, via FedEx. In response to these contacts, a member of the task force would go to the FedEx warehouse to search the shipment.

*Ghali*, 184 Fed. Appx. at 392-393.

Petitioner used proceeds from his criminal organization to purchase two houses in Arlington, Texas. (PSR ¶ 13.) He used straw buyers to buy the properties and gave them cash for the down payment. (*Id*.) The straw buyers were instructed to finance the remaining balance on the houses using a commercial lender and title the property in the straw buyers' names.

### III. Discussion

**1. Statute of Limitations**

Respondent concedes this petition was timely filed. *Santos* is a retroactively-applicable Supreme Court decision that created a newly recognized right, and Petitioner filed his petition within one year of the *Santos* decision. *See* 28 U.S.C. § 2255(f)(3); *Garland v. Roy*, 615 F.3d 391, 396-99 (5th Cir. 2010).

**2. *Santos* Decision**

Petitioner was convicted of two forms of money laundering. The first was money laundering under the "sting" provision of the money laundering statute, 18 U.S.C. § (a)(3)(A), and the second was concealment money laundering under 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h).

The *Santos* decision involved money laundering under 18 U.S.C. § 1956(a)(1)(A)(i), which criminalizes transactions to promote criminal activity. The statute states:

> (a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –
> (A)(i) with the intent to promote the carrying on of specified unlawful activity . . . shall be sentenced to . . . imprisonment for not more than twenty years . . . .

*Santos* involved money laundering in which the gross proceeds from an illegal lottery

were used to pay employees and lottery winners. *Santo*s, 553 U.S. at 509. The Supreme Court found that defining the term "proceeds" to mean gross receipts would mean the government could always charge money laundering in cases where the alleged money laundering was a normal part of the of the underlying unlawful activity. Justice Stevens wrote that the defendant then becomes doubly liable for the specified unlawful activity and the money laundering when the two are committed in the same transaction.[1] *Id*. at 527-28.

To alleviate this double liability, or "merger" problem, Justice Stevens's concurrence set out a two-part test.

> First, a court must determine whether, when "proceeds" are defined as "gross receipts" rather than "profits," the defendant would face the "merger problem." If so, then, . . . "proceeds" must be defined as "profits"; and the court need not proceed to the second step of Justice Stevens' analysis. However, if, instead, there is no "merger problem," . . . a court must look to the legislative history of the money-laundering statute to determine how to define "proceeds." A court does so with the default presumption that "proceeds" should be defined as "gross receipts," unless the legislative history affirmatively supports interpreting "proceeds" to mean "profits."

*Garland*, 615 F.3d at 396-99 (citing *United States v. Santos*, 553 U.S. 507 (2008)).

### 3. Money Laundering Sting Convictions

The *Santos* decision does not effect Petitioner's money laundering sting convictions. Petitioner was convicted under 18 U.S.C. § 1956(a)(3)(A), which states:

Whoever, with the intent –

(A) to promote the carrying on of specified unlawful activity . . . conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of specified unlawful activity . . . shall be . . . imprisoned for not more than 20 years . . . . [T]he term "represented" means any representation made by a

---

[1]The Fifth Circuit has determined that because the *Santos* decision was a plurality, Justice Stevens' concurrence "controls and therefore determines the scope of the Court's holding." *Garland*, 615 F.3d at 398.

> law enforcement officer or by another person at the direction of, or with the approval of, a Federal official authorized to investigate or prosecute violations of this section.

In a money laundering sting prosecution, the "proceeds" refers to the property involved in the financial transaction. *United States v. Nektalov*, 461 F.3d 309, 314 (2d Cir. 1006); *United States v. Castaneda-Cantu*, 20 F.3d 1325, 1330 (5th Cir. 1994). In this case, the "proceeds" refers to the property that undercover agents represented as stolen property, i.e., the infant formula and other goods. *Ghali*, 184 Fed. Appx. at 396-97.

Applying the *Santos* test, there is no merger problem because Petitioner was laundering proceeds (property) from the unlawful activity of a third party (the government's undercover operation). The "net proceeds" and "profits" distinction does not apply to these sting money laundering convictions because "proceeds" does not apply to the money Petitioner used to buy the stolen goods, but applies to the stolen goods themselves. *See Ghali* 184 Fed. Appx. at 396-97 (referring to the stolen property as the "proceeds" of the unlawful activity); *United States v. Stratievsky*, 430 F. Supp.2d 819, 824-25 (N.D. Il. 2006) (stating in money-laundering sting context, the "'gross proceeds' versus 'net profits' distinction [is] . . . meaningless" because "the concern about ensuring that a defendant is not punished for money laundering each time he simply engages in the underlying, antecedent criminal activity, is not present"). The "net proceeds" versus "profits" distinction from *Santos* therefore does not invalidate Petitioner's money laundering sting convictions.

**4.     Money Laundering Concealment Conviction**

Petitioner was also convicted of a conspiracy to commit concealment money laundering under 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1956(h). Title 18 U.S.C. § 1956(a)(1)(B)(i) states:

> (a)(1)  Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –
> (B)  knowing that the transaction is designed in whole or in part –
> (i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . . shall be sentenced to . . . imprisonment for not more than twenty years . .

The government charged in count nineteen of the superceding indictment that Petitioner used the proceeds generated from his illegal activity to purchase two houses in Arlington, Texas, using straw buyers so he could conceal and disguise the source, ownership or control of these proceeds. (Superceding Indictment at 31-38.)

Applying the *Santos* decision to this conviction does not invalidate the conviction. There is no merger problem with this conviction because Petitioner's specified unlawful activity is separate and distinct from buying the properties. Applying either a "gross receipts" or "profits" definition to proceeds, therefore causes no merger problem. The Court therefore starts with the default position that "proceeds" means "gross receipts." *Garland*, 615 F.3d at 401. Petitioner has cited to no legislative history showing that Congress intended this section to apply only to "profits." Additionally, however, it is common sense that the proceeds used to buy the Arlington properties would come from the "profits" of Petitioner's unlawful activity rather than "gross receipts." Petitioner's claim is without merit and should be denied.

**RECOMMENDATION**

For the foregoing reasons, the Court recommends that the motion to correct, vacate or

set-aside sentence pursuant to 28 U.S.C. § 2255 be denied.

Signed this 30th day of March, 2011.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner

provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).